UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| DENISE REDFIELD, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> BLUEKNIGHT ENERGY PARTNERS, L.P., ) <br> DUKE R. LIGON, STEVEN M. ) <br> BRADSHAW, JOHN A. SHAPIRO, ) <br> WILLIAM W. LAMPTON, ROBERT H. ) <br> LAMPTON, JOEL D. PASTOREK, W. R. ) <br> ADAMS, and EDWARD DREW BROOKS, ) <br> ) <br> Defendants. ) | Case No. _____ <br> <br> JURY TRIAL DEMANDED |

## COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

Plaintiff, by her undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to herself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

### NATURE OF THE ACTION

1. This action stems from a proposed transaction announced on April 22, 2022 (the "Proposed Transaction"), pursuant to which Blueknight Energy Partners, L.P. ("Blueknight" or the "Partnership") will be acquired by affiliates of Ergon, Inc.

2. On April 21, 2022, Blueknight's Board of Directors (the "Board" or "Individual Defendants") caused the Partnership to enter into an agreement and plan of merger (the "Merger Agreement") with Ergon Asphalt & Emulsions, Inc. ("Parent"), Merle LLC, ("Merger Sub"), and Blueknight Energy Partners G.P., L.L.C. (the "General Partner"). Pursuant to the terms of the Merger Agreement, Blueknight's unitholders will receive $4.65 in cash for each unit of Blueknight they own.

3. On June 1, 2022, defendants filed a proxy statement (the "Proxy Statement") with the United States Securities and Exchange Commission (the "SEC") in connection with the Proposed Transaction.

4. The Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading. Accordingly, plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Proxy Statement.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

6. This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper under 28 U.S.C. § 1391(b) because a portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

8. Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Blueknight common units.

9. Defendant Blueknight is a Delaware limited partnership and a party to the Merger Agreement. Blueknight's common units are traded on the NASDAQ under the ticker symbol "BKEP."

10. Defendant Duke R. Ligon is Chairman of the Board of the Partnership.

11. Defendant Steven M. Bradshaw is a director of the Partnership.

12. Defendant John A. Shapiro is a director of the Partnership.

13. Defendant William W. Lampton is a director of the Partnership.

14. Defendant Robert H. Lampton is a director of the Partnership.

15. Defendant Joel D. Pastorek is a director of the Partnership.

16. Defendant W.R. Adams is a director of the Partnership.

17. Defendant Edward Drew Brooks is a director of the Partnership.

18. The defendants identified in paragraphs 10 through 17 are collectively referred to herein as the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

*Background of the Partnership and the Proposed Transaction*

19. Blueknight is a publicly-traded master limited partnership that owns the largest independent asphalt terminalling network in the country.

20. The Partnership's operations include 9 million barrels of liquid asphalt storage capacity across 54 terminals and 26 states throughout the United States.

21. On April 21, 2022, Blueknight's Board caused the Partnership to enter into the Merger Agreement.

22. According to the press release announcing the Proposed Transaction:

Blueknight Energy Partners, L.P. ("Blueknight" or the "Partnership") (Nasdaq: BKEP and BKEPP) today announced that it has entered into a definitive agreement and plan of merger ("Merger Agreement") pursuant to which an affiliate of Ergon, Inc. ("Ergon") would acquire all of the outstanding common and preferred units of the Partnership not already owned by Ergon and its affiliates (the "Public Common Units" and "Public Preferred Units"). The agreement follows the offer made by Ergon in October 2021 to acquire the Public Common Units and Public Preferred Units.

3

The agreement provides for an all-cash transaction, whereby:

- each holder of the Public Common Units would receive $4.65 per common unit owned, representing a 51.5% premium to the market closing price prior to Ergon's offer made on October 8, 2021 and a 40.5% premium to the trailing 30-day volume-weighted average price on April 21, 2022; and

- each holder of the Public Preferred Units would receive $8.75 per preferred unit owned, which is greater than the 52-week trading high for such units and represents a 5.3% premium to the market closing price prior to Ergon's offer made on October 8, 2021 and a 3.6% premium to the trailing 30-day volume-weighted average price on April 21, 2022.

The Board of Directors of Blueknight Energy Partners G.P., L.L.C., the general partner of Blueknight (the "GP Board"), delegated to a conflicts committee of the GP Board (the "BKEP Conflicts Committee"), consisting solely of the Partnership's three independent directors, the authority to review, evaluate and negotiate and approve the transaction on behalf of Blueknight and the holders of the Public Common Units. The BKEP Conflicts Committee, after evaluating the transaction with its independent legal and financial advisors, unanimously approved the transaction on behalf of the holders of the Public Common Units. Following the receipt of the recommendation of the BKEP Conflicts Committee, the GP Board approved the transaction.

The transaction is expected to close in mid-2022, subject to customary approvals. Ergon has committed to vote its units to approve the transaction.

Advisors

The BKEP Conflicts Committee engaged Gibson, Dunn & Crutcher LLP and Evercore as its legal and financial advisors. Ergon engaged Baker Botts L.L.P. and Jefferies LLC as its legal and financial advisors.

***The Proxy Statement Omits Material Information, Rendering It False and Misleading***

23.  Defendants filed the Proxy Statement with the SEC in connection with the Proposed Transaction.

24.  As set forth below, the Proxy Statement omits material information.

25.  First, the Proxy Statement omits material information regarding the Partnership's financial projections.

26. The Proxy Statement fails to disclose: (i) all line items used to calculate the projections; and (ii) a reconciliation of all non-GAAP to GAAP metrics.

27. The disclosure of projected financial information is material because it provides unitholders with a basis to project the future financial performance of a company, and allows unitholders to better understand the financial analyses performed by the Partnership's financial advisor in support of its fairness opinion.

28. Second, the Proxy Statement omits material information regarding the analyses performed by the Partnership's financial advisor, Evercore.

29. With respect to Evercore's Discounted Cash Flow Analysis, the Proxy Statement fails to disclose: (i) the terminal values used in the analysis; and (ii) the individual inputs and assumptions underlying the discount rates, perpetuity growth rates, and multiples used in the analysis.

30. With respect to Evercore's Peer Group Trading Analysis, the Proxy Statement fails to disclose the individual multiples and metrics for the companies.

31. With respect to Evercore's Precedent M&A Transactions Analysis, the Proxy Statement fails to disclose the individual multiples and metrics for the transactions.

32. When a banker's endorsement of the fairness of a transaction is touted to unitholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

33. Third, the Proxy Statement fails to disclose the circumstances under which Evercore may receive "a fee of up to $500,000," and whether the Individual Defendants intend to pay Evercore such fee.

34. The omission of the above-referenced material information renders the Proxy Statement false and misleading.

35. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Partnership's unitholders.

## COUNT I

**Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Blueknight**

36. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

37. The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading. Blueknight is liable as the issuer of these statements.

38. The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Partnership, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

39. The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

40. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable unitholder will consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to unitholders.

41. The Proxy Statement is an essential link in causing plaintiff to approve the Proposed Transaction.

42. By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

43. Because of the false and misleading statements in the Proxy Statement, plaintiff is threatened with irreparable harm.

## COUNT II

### Claim for Violation of Section 20(a) of the 1934 Act
### Against the Individual Defendants

44. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

45. The Individual Defendants acted as controlling persons of Blueknight within the meaning of Section 20(a) of the 1934 Act as alleged herein. By virtue of their positions as officers and/or directors of Blueknight and participation in and/or awareness of the Partnership's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Partnership, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

46. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

47. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Partnership, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as

alleged herein, and exercised the same. The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the making of the Proxy Statement.

48. By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the 1934 Act.

49. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act. As a direct and proximate result of defendants' conduct, plaintiff is threatened with irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Directing the Individual Defendants to disseminate a Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E. Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F.      Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby requests a trial by jury on all issues so triable.

Dated: June 15, 2022                              **RIGRODSKY LAW, P.A.**

                                                  By:  */s/ Gina M. Serra*
                                                       Gina M. Serra
                                                       825 East Gate Boulevard, Suite 300
                                                       Garden City, NY 11530
                                                       Telephone: (516) 683-3516
                                                       Email: gms@rl-legal.com

                                                       *Attorneys for Plaintiff*